# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | | |
|---|---|---|
| RAYMOND WATISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:20-cv-00081 |
| | ) | |
| GRADY PERRY, et al., | ) | JUDGE CAMPBELL |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Raymond "King Belal" Watison, an inmate confined in the South Central Correctional Facility (SCCF) in Clifton, Tennessee, filed a pro se Complaint for alleged violations of his civil rights pursuant to 42 U.S.C. § 1983, along with an Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"). (Doc. Nos. 1, 2.) The matter is before the Court for a ruling on Plaintiff's IFP Application and an initial review of his Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED AS A PAUPER

Under the PLRA, a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). 28 U.S.C. § 1915(a). Because it appears from Plaintiff's submission that he lacks sufficient financial resources from which to pay the full filing fee in advance, the Court **GRANTS** his motion (Doc. No. 2) to proceed IFP in this matter.

However, under Section 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby **ASSESSED** a $350 filing

fee, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust-fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in the plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust-fund officer must withdraw from Plaintiff's account and pay to the Clerk monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire $350 filing fee is paid in full. *Id.* § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this Court as required by this Order, he must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** to send a copy of this Order to the Warden of the prison in which Plaintiff is currently housed to ensure that the custodian of Plaintiff's inmate trust account complies with the portion of 28 U.S.C. § 1915 pertaining to payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance with this Order.

## II. INITIAL REVIEW

**A. Standard**

Title 28 U.S.C. § 1915(e)(2) requires the Court to conduct an initial review of any complaint filed IFP, and to dismiss the complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). To state a Section 1983 claim, a plaintiff must allege: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

**B. Plaintiff's Allegations**

Plaintiff sues SCCF Warden Grady Perry, Associate Warden Carter, Assistant Chief of Security Coleman, Sergeants Tarnwaski, Tyler Barnett, and White, and Officer Carpenter, in their official and individual capacities. (Doc. No. 1 at 1–2.) He alleges that on October 9, 2020, he "refused to handover the handcuffs" to Carpenter and Tarnwaski until the air ventilation system, which had been off for two days, was turned on. (*Id.* at 4.) Carpenter and Tarnwaski left the pod, and the air was turned on. The "CAT team" then came to Plaintiff's cell to retrieve the handcuffs, and Plaintiff complied and turned over the handcuffs. (*Id.*) CAT team members then informed Plaintiff that they were to take Plaintiff's property, including his legal records, on orders from Coleman, and that they would use force to do so if necessary. (*Id.*) Plaintiff "declined to handover his legal property," and the CAT team left the pod. (*Id.*) Tarnwaski later returned with three other prison employees with riot gear, including a shield, a nightstick, and cans of pepper spray. (*Id.* at 5.) Plaintiff yelled "all this for some legal property?", to which Tarnwaski responded "don't bitch up now Mr. South Central." (*Id.*) Plaintiff alleges that response represents "the 'name calling' used by prison officials, toward the plaintiff for filing civil suits." (*Id.*)

Plaintiff was handcuffed and escorted by CAT team members to another area of the prison, where he was stripped and allowed to keep only his underwear and a pair of shower shoes, before being returned to a cell bereft of any property, including bedding, clothing, hygiene items, legal or religious personal property. (*Id.*) With materials passed through a crack in the wall by a neighboring inmate, Plaintiff submitted a grievance against Coleman. (*Id.*) The grievance response from Carter advised that Plaintiff's property was taken "due to you[r] covering your windows and staff not being able to see." (*Id.* at 6.) The response stated that covering the

4

windows was a violation of policy, but Plaintiff suggests that the fact that he was not issued a disciplinary charge for that infraction means the true motivation to take his property was retaliation. (*Id.*) The grievance committee recommended that Plaintiff's legal property be returned, and it was returned approximately a week later, on October 17. (*Id.*) However, Plaintiff alleges some of his legal materials were missing from the returned property, including thirty-two pictures and documents that are "crucial and essential" to a pending appeal which "was denied on November 19, 20[20]" but in which Plaintiff had timely requested re-hearing,[1] as well as discovery in a case in which Coleman and Perry are defendants, *Watison v. Perry, et al.*, No. 1:20-cv-00008 (M.D. Tenn.). (*Id.* at 6–7.) Plaintiff claims that Coleman's "confiscation and destruction" of his legal papers, therefore, "denied plaintiff court access." (*Id.* at 7.) Specifically, Plaintiff alleges that, if a pending motion for rehearing an appeal is denied, he will need the missing materials to seek discretionary review in the Tennessee Supreme Court and will suffer prejudice to the litigation without them. (*Id.*) Plaintiff has received no response to his efforts to reclaim his missing legal materials, including a prison property claim form and a letter to the attorney representing Coleman in the other suit. (*Id.*)

Plaintiff also alleges that Carter, Coleman, Tarnwaski, White, Barnett, and Carpenter deprived him of the "minimal civilized measures of life's necessities" by causing him to spend seven days without showers, outdoor recreation, cleaning or personal hygiene supplies, clothing, or bedding. (*Id.*) Between October 10 and October 17, Defendants Carter, White, Barnett, and Tarnwaski personally refused to provide Plaintiff with those items or activities, and Coleman and Carpenter issued orders to other staff not to provide him with anything. (*Id.* at 7–8.) When

---

[1] The Court takes judicial notice of the November 19, 2020 decision affirming the dismissal of Plaintiff's state petition for writ of coram nobis. *See Watison v. State*, No. W2019-01650--CCAR3-ECN, 2020 WL 6821793 (Tenn. Crim. App. Nov. 19, 2020) (affirming denial of writ based on lack of evidence; declining to address trial court's secondary finding that petition was untimely). The Complaint in the case at bar was signed on December 4 and postmarked on December 7, 2020. (Doc. No. 1 at 10, 12.)

5

Coleman was personally in the pod, Plaintiff asked him why he (Plaintiff) was being denied property and privileges, and Coleman answered "I'm not giving you anything" and "smiled in Plaintiff['s] face." (*Id.* at 8.) At one point, Warden Grady Perry, who is also a defendant in one of Plaintiff's other lawsuits, came into the pod and told Plaintiff "you had your window covered" in response to Plaintiff's asking the reason for his restrictions. (*Id.* at 9.)

Plaintiff claims that the deprivations he suffered constituted "cruel and unusual punishment, in retaliation for having filed civil suit against Mr. Larry Coleman." (*Id.* at 8.) He vaguely suggests that Coleman demanded that Plaintiff dismiss his lawsuit against Coleman in exchange for the return of his missing property. (*Id.* at 3.) He alleges that the conditions in which he was held were "unhealthy, unsanitary, dangerous and offensive," including a toilet "mildewed with feces," and nighttime temperatures so cold that Plaintiff tore open the mattress to crawl inside it. (*Id.* at 8–9.) The inability to clean, bathe, or brush his teeth led to stains and decay on his teeth, cracked skin on his feet, and "uncontrollable itching" around his genitals from wearing the same underwear for a week. (*Id.* at 9.)

As relief, Plaintiff seeks compensatory and punitive damages from the Defendants in excess of $100,000. (*Id.* at 9–10.)

**C. Analysis**

The Complaint asserts claims for violations of Plaintiff's First Amendment rights to be free from retaliation and to access the courts, and for violation of his Eighth Amendment right to be free from cruel and unusual punishment.

To state a plausible claim of First Amendment retaliation, Plaintiff must allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the

adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). Plaintiff sufficiently alleges that he engaged in protected conduct by filing a civil rights lawsuit against Defendants Coleman and Perry. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) ("[P]rotected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims.") (citing *Thaddeus-X*, 175 F.3d at 391). He also adequately alleges, for purposes of initial review, that the adverse actions taken against him—the confiscation of his legal materials and the destruction of papers and photographs that were directly related to his earlier-filed lawsuit, and the deplorable conditions of his confinement between October 10 and 17, 2020—were sufficiently severe to deter a person of ordinary firmness from continuing to litigate that suit against his jailors. Finally, Plaintiff plausibly alleges at this early stage that such actions were motivated not by his covering of his cell window or engaging in other misbehavior, but by his maintenance of lawsuits against Coleman and Warden Perry, as supported by his allegations that no disciplinary charge was filed against him and that Coleman intimated that Plaintiff's property could be returned if his pending lawsuit were dismissed. Plaintiff's retaliation claim will be allowed to proceed for further development.

Plaintiff also alleges that the retaliatory deprivation of his confiscated legal materials violated his First Amendment right of access to the courts.[2] Inmates have a fundamental

---

[2] Plaintiff does not allege that the loss or destruction of his legal materials constituted a deprivation of property in violation of due process. Even if the Court were to liberally construe the Complaint to assert such a claim, it would be subject to dismissal due to Plaintiff's failure to plead the inadequacy of post-deprivation remedies under state law. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Torrez v. Corr. Corp. of Am.*, No. CV 10-2093-PHX-MHM, 2010 WL 4922876, at *5–6 (D. Ariz. Nov. 29, 2010) (holding that "availability of a common-law tort suit against a private prison employee constitutes an adequate post-deprivation remedy" that "precludes a claim for violation of due process").

7

constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343, 351 (1996). But in order to state a claim for denial of such access, an inmate must allege an "actual injury" to a "nonfrivolous," "arguable" legal claim that involves an attack on his incarceration or challenge to the conditions of his confinement. *Lewis*, 518 U.S. at 349, 353 & n.3, 355. Here, Plaintiff alleges that the withholding of his legal materials would prejudice his ability to further appeal the decision affirming the denial of his coram nobis[3] challenge to his conviction. However, coram nobis is an "'extraordinary procedural remedy,' filling only a 'slight gap into which few cases fall,'" *Watison*, 2020 WL 6821793, at *3 (quoting *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999)), and it had already been denied, and that denial affirmed, by the time Plaintiff's legal materials were confiscated. The U.S. Supreme Court, in considering the requirements for pleading access-to-courts claims, has highlighted "the need for care in requiring that the predicate claim be described well enough [in the complaint] to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). The Court finds that this standard is not met by the Complaint in this case, which does not describe the nature of Plaintiff's underlying claim at all, but only states that it was awaiting ruling on a motion to rehear the denial of relief on appeal—a rather unhopeful procedural posture. Accordingly, the Complaint fails to state a plausible First Amendment claim for denial of access to courts.

Finally, Plaintiff claims that the conditions of his confinement between October 10 and 17, in addition to being retaliatory, violated his Eighth Amendment right to be free from cruel

---

[3] Under Tennessee law, "a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105(b).

8

and unusual punishment. These conditions included Plaintiff's exposure to a toilet "mildewed with feces," an inability to clean, bathe, or brush his teeth, and the denial of clothing or bedding. (Doc. No. 1 at 8–9.) "In the context of 'conditions of confinement' cases, the Eighth Amendment is concerned only with 'deprivations of essential food, medical care or sanitation' or 'other conditions intolerable for prison.'" *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Courts have found this requirement of objective seriousness unmet when "prison officials failed to provide [the] prisoner with toilet paper for five days, and with soap, toothbrush, and toothpaste for ten days," and "when inmates endured, among other deprivations, no toiletries or clothing for six days." *Flanory*, 604 F.3d at 254 (citing cases). But Plaintiff also alleges that he was deprived of bedding, and that his cell was so cold at night that he resorted to tearing open his mattress and crawling inside it for warmth. (Doc. No. 1 at 9.) Similar conditions involving the lack of sufficient clothing or bedding, combined with cell temperatures cold enough to produce physical discomfort and to require the inmate to sleep between two mattresses, have been deemed sufficient to support an Eighth Amendment claim. *Burley v. Miller*, 241 F. Supp. 3d 828, 838 (E.D. Mich. 2017) (citing, *e.g.*, *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991), and *Wright v. McMann*, 460 F.2d 126, 129 (2d Cir. 1972)). Plaintiff's allegations are likewise sufficient for purposes of initial review to establish the objective component of his Eighth Amendment claim. Moreover, he adequately alleges that Defendants were subjectively, deliberately indifferent to the harm Plaintiff suffered as a result of these conditions, insofar as they all were committed to the 7-day term of his punishment regardless of his complaints. *See Flanory*, 604 F.3d at 254

("The subjective component requires a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety."); (Doc. No. 1 at 8–9 (describing each Defendant's enforcement of his property restriction, loss of privileges, and lack of bedding and hygiene items).) Plaintiff's Eighth Amendment claim will be allowed to proceed.

The Court notes that Plaintiff sues the seven Defendants—all of whom are employed at SCCF—in their official as well as individual capacities. (*See* Doc. No. 1 at 2.) Because "individuals sued in their official capacities stand in the shoes of the entity they represent," *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)), Plaintiff's official-capacity claims against these Defendants are effectively claims against CoreCivic,[4] the private entity that operates SCCF pursuant to contract with the government. *Colbert v. Lindamood*, No. 1:18-cv-00030, 2018 WL 2416201, at *5 & n.3 (M.D. Tenn. May 29, 2018) (taking judicial notice of Tennessee Department of Correction website showing that "CoreCivic is a private entity contracted to manage SCCF"). But in order to state a plausible claim against CoreCivic, Plaintiff must allege that the execution of a specific corporate policy or custom caused the harm of which he complains. *Welch v. CoreCivic Inc.*, No. 3:17-cv-01516, 2018 WL 5808728, at *1 (M.D. Tenn. Nov. 6, 2018) (citing *Alkire*, 330 F.3d at 815). Although Plaintiff concludes his Complaint with the allegation that Defendants' actions "ha[ve] bec[o]me a systematic behavior and practice" towards him in order to induce him "to dismiss civil suits and deter him from petitioning the court for redress of grievances" (Doc. No. 1 at 9), he does not allege that any policy of CoreCivic motivated their conduct. Accordingly, the colorable First and Eighth Amendment claims identified above will proceed against Defendants only in their individual capacities.

---

[4] *See Sexton v. Lindamood*, No. 1:16-cv-00071, 2019 WL 923787, at *13 (M.D. Tenn. Feb. 7, 2019), *report and recommendation adopted*, 2019 WL 914135 (M.D. Tenn. Feb. 25, 2019) (finding that SCCF employees in their official capacity "stand in the shoes of their employer, CoreCivic").

10

## III. FURTHER PROCEEDINGS

As described above, the Court finds that the Complaint states nonfrivolous claims against the seven named Defendants in their individual capacities. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff service packets (blank summonses and USM 285 forms) for each of these Defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **21 DAYS** of the date of this Order. Upon return of the completed service packets, **PROCESS SHALL ISSUE**.

The Court's determination that the complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE