IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

RAYMOND WATISON                          )
                                         )
        v.                               )          NO.  1:20-00081
                                         )
GRADY PERRY, et al.                      )


TO:    **Honorable William L. Campbell, Jr., District Judge**


## R E P O R T   A N D   R E C O M M E N D A T I O N

By Memorandum and Order entered April 27, 2021 (Docket Entry No. 4), this *pro se* and *in forma pauperis* prisoner civil rights action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court are: the motion for summary judgment filed by Defendants Grady Perry, Tyler Barnett, Michelle Carpenter, Larry Coleman, Tina Tarnowski, and Bethanie White (Docket Entry No. 47) and Plaintiff's motion for summary judgment (Docket Entry No. 60).   For the reasons set out below, the undersigned respectfully recommends that Defendants' motion be granted and that Plaintiff's motion be denied.   The Court further recommends that Defendant Carter be dismissed from this action under Rule 4(m) of the Federal Rules of Civil Procedure for lack of service of process.

## I.  PROCEDURAL BACKGROUND

Raymond Watison ("Plaintiff") is an inmate of the Tennessee Department of Correction ("TDOC") currently confined at the Trousdale Turner Correctional Center in Hartsville, Tennessee.   He filed this lawsuit *pro se* and *in forma pauperis* on December 17, 2020, seeking

damages under 42 U.S.C. § 1983 for violations of his constitutional rights alleged to have been committed at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee during his confinement there in 2020. *See* Complaint (Docket Entry No. 1).

Upon initial review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court found that Plaintiff asserted a colorable First Amendment retaliation claim against SCCF Assistant Chief of Security Larry Coleman ("Coleman") and a colorable Eighth Amendment conditions of confinement claim against Coleman and six other SCCF officials and employees: Warden Grady Perry ("Perry"); Associate Warden f/n/u Carter ("Carter"); Sergeants Tyler Barnett ("Barnett"), Tina Tarnowski ("Tarnowski"), and Bethanie White ("White"), and Correctional Officer Michelle Carpenter ("Carpenter"). *See* Memorandum and Order at 6-10.

All Defendants except Defendant Carter were served with process and filed a joint answer. (Docket Entry No. 25.) Process for Defendant Carter was returned unexecuted in June 2021. (Docket Entry No. 18.) Pursuant to a scheduling order (Docket Entry No. 30), a period for pretrial activity in the case occurred. All scheduling order deadlines have now expired. Although Plaintiff demands a jury trial, no trial date has been set until resolution of the dispositive motions. Other than the two pending motions for summary judgment, there are no motions pending in the case.

## II. FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

On October 1, 2020, Plaintiff was housed in the segregation unit. Pursuant to TDOC Policy #506.16, Living Conditions for Segregated Inmates, *see* Docket Entry No. 48-2 at 7-16, inmates in the segregation unit are subject to some property restrictions and are limited to three

opportunities a week to shower/bath/shave and are limited to five opportunities for outside-the-cell exercise or recreation time. *See* Policy #506.16(VI)(B).[1]

On October 9, 2020, Plaintiff was placed on an additional, seven day property restriction at the directive of Defendant Coleman, whereby (1) all items were removed from Plaintiff's cell except for his mattress and (2) the only clothing he was permitted to have was his boxer shorts. (Docket Entry No. 54-1 at 15.) Such a restriction is permitted by Policy #506.16(V), (VI)(A)(3), and (VI)(D)(3). Although the restriction was implemented that day, Defendant Coleman's written memorandum to Warden Perry and the TDOC Contract Monitor to impose the restriction was not approved until either October 10 or 12, 2020, when it was signed by Sidney Carter, the Assistant Warden of Operations and the Warden's designee and Cole Truman, the Contract Monitor.[2] This restriction remained in place until October 17, 2020, when the removed items of property were largely returned to Plaintiff, except for some legal property, photographs, and other items of clothing bedding, and towels. The failure to return these items is not a claim in this case.

---

[1] Defendants contend that Plaintiff was housed in punitive segregation in early October because of disciplinary charges that had been brought against him and for which he was later found guilty on October 9, 2020. *See* Declaration of Coleman (Docket Entry 48-5) at ¶ 3; Defendants' Statement of Undisputed Facts (Docket Entry No. 48) at ¶ 2. In contrast, Plaintiff asserts that Segregation Unit Record forms completed during October have a box for "PC" check-marked in the section indicating the "type of segregation." *See* Exhibit A to Plaintiff's Response to Defendants' Statement of Undisputed Facts (Docket Entry No 54-1). He contends this means that he was housed in protective custody. Whether or not Plaintiff was actually housed in protective custody or in punitive segregation, however, is not material to resolution of the claims at issue in this case.

[2] Although the written memorandum imposing a property restriction appears to show the date of October 12, 2020, as the day that it was signed by Mr. Carter and Mr. Turman, *see* Docket Entry No. 54-1 at 15, Defendant Coleman declares that it was signed on October 10, 2020. *See* Declaration of Coleman (Docket Entry No. 48-5) at ¶ 11. The exact date when it was signed is not significant for resolution of Plaintiff's claims.

3

Plaintiff alleges that his property was confiscated after an incident on October 9, 2020, when he refused to "handover handcuffs" to Defendants Carpenter and Tarnowski because of his displeasure that the air ventilation system had been off for two days. *See* Complaint at 4. He contends that Defendant Coleman became involved and issued the property restriction and directed the confiscation of Plaintiff's legal property as an act of retaliation against him because of another federal civil rights lawsuit that he had recently filed against Coleman and others.[3] *Id*. at 3. In contrast, Coleman asserts that the property restriction was put in place because Plaintiff had covered the window into his cell and refused directives by officers to uncover the window. *See* Declaration of Coleman at ¶¶ 7-9.

Plaintiff alleges that he experienced poor living conditions while on the property restriction and that these conditions amounted to cruel and unusual punishment in violation of his Eighth Amendment rights. *See* Complaint at 7-8. He alleges that he was deprived of showers, outside recreation, cleaning or hygiene supplies, clothing, and proper bedding. He further alleges that the conditions in which he was held were "unhealthy, unsanitary, dangerous and offensive," including a toilet "mildewed with feces," and that nighttime temperatures that were so cold that he had to tear open the mattress to crawl inside it. *Id*. at 8-9. Plaintiff alleges that his inability to clean, bathe, or brush his teeth led to stains and decay on his teeth, cracked skin on his feet, and "uncontrollable itching" around his genitals from wearing the same underwear for a week. *Id*. at 9. Plaintiff alleges that Defendants Carter, White, Barnett, Tarnowski, Carpenter, and Coleman were all personally involved in some manner in keeping him confined in the harmful conditions because they were asked by him when he could get his property

---

[3] *See Watison v. Core Civic Solutions, et al.*, No 3:20-00008.

4

returned or they told other prison staff that Plaintiff was on property restrictions and wasn't "allowed anything." *Id*. at 8.

### III.  MOTIONS FOR SUMMARY JUDGMENT

By their motion for summary judgment, Defendants seek summary judgment on each of Plaintiff's claims.  Defendants support their motion with: (1) a memorandum of law (Docket Entry No. 49); (2) a statement of undisputed material facts (Docket Entry No. 48); (3) the declarations of Defendants Perry (Docket Entry No. 48-2), Barnett (Docket Entry No. 48-3), Carpenter (Docket Entry No. 48-4), Coleman (Docket Entry No. 48-5), Tarnowski (Docket Entry No. 48-6), and White (Docket Entry No. 48-7); (4) the declaration of SCCF employees Emily Pugh (Docket Entry No. 48-8) and Heather Kelley (Docket Entry No. 48-9); and (5) copies of Defendants' unanswered written requests for admissions to Plaintiff (Docket Entry No. 48-1).

Defendant Perry argues that Plaintiff did not exhaust his available administrative remedies for the claims brought against Perry prior to filing his lawsuit and thus failed to satisfy the exhaustion requirement of the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e.  Relying upon the declaration of Kelley and exhibits attached thereto, Perry contends that Plaintiff filed three grievances related to the incidents at issue but that none of the grievances included allegations of any wrongdoing by Perry.  *See* Memorandum of Law (Docket Entry No. 49) at 4-6.  Defendant Perry also argues that there is a lack of evidence showing his personal involvement in the events at issue.  *Id*. at 20.

The remaining Defendants argue that they are entitled to summary judgment on the merits of Plaintiff's claims.  With respect to the conditions of confinement claim, Defendants contend that the living conditions about which Plaintiff complains did not cause anything more

5

than a "*de minimis* injury" and were not the type of extreme conditions necessary to violate the Eighth Amendment. *Id*. at 6-15. They also argue that Plaintiff has no evidence that any of the named Defendants acted with deliberate indifference toward him. *Id*. at 15-16. With respect to Plaintiff's retaliation claim, Defendant Coleman argues that Plaintiff cannot prove the necessary elements for a First Amendment retaliation claim. *Id*. 16-20. Finally, Defendants argue that Plaintiff's version of events is so contradicted by the record that it cannot be believed. *Id.* at 21-22.

Plaintiff seeks the entry of summary judgment in his favor against all Defendants. He incorporates into his motion both his legal arguments and a statement of facts that he contends are undisputed and that he contends support his claims. *See* Plaintiff's Motion for Summary Judgment. As evidence in support of his motion, he relies upon his complaint, the written memorandum placing him on seven days of property restrictions (Docket Entry No. 60-1 at 7), and the segregation unit activity records for him during the time period at issue (Docket Entry No. 60-1 at 4-7).

## IV. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn

6

from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (*quoting Anderson*, 477 U.S. at 252).

The standard of review when cross-motions for summary judgment are before the Court does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts ...[.] Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Id*. (citations omitted).

## V. PLRA EXHAUSTION

42 U.S.C. § 1997e(a) of the PLRA requires that a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies before filing a lawsuit about the conditions. *See Porter v. Nussle*, 534

7

U.S. 516, 524 (2002). If there is a grievance procedure available to inmates, the prisoner plaintiff must present his grievance through "one complete round" or through all the steps of the administrative grievance procedure in order to satisfy the exhaustion requirement. *See Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *abrogated on other grounds*, *Woodford v. Ngo*, 548 U.S. 81 (2006); *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). The failure of a prisoner plaintiff to satisfy the exhaustion requirement is an affirmative defense that a defendant must raise and support. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once the defense is raised and supported, the burden is on the prisoner plaintiff to present evidence showing that he has complied with the PLRA's requirement of exhaustion. *See Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

## VI.  INDIVIDUAL LIABILITY UNDER 42 U.S.C. § 1983

For any claim brought under 42 U.S.C. § 1983, a defendant cannot be held individually liable absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct that is being litigated. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005); *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992). There must be evidence showing that a defendant personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the alleged unconstitutional conduct. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

## VII.  CONSTITUTIONAL STANDARDS

The Eighth Amendment prohibits conditions of confinement that amount to a wanton and unnecessary infliction of pain upon a prison inmate. *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986). This protection requires that prison officials house inmates in conditions that conform to

8

the minimal civilized measure of life's necessities. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). "In the context of 'conditions of confinement' cases, the Eighth Amendment is concerned only with 'deprivations of essential food, medical care or sanitation' or 'other conditions intolerable for prison.'" *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *Rhodes*,452 U.S. at 347). "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer,* 511 U.S. at 834).

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). In other words, a prisoner cannot be retaliated against because he has exercised his First Amendment rights. *See Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005); *Smith v. Campbell*, 250 F.3d 1032, 1036-37 (6th Cir. 2001); *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999). This is true even if the act complained about would not violate the Constitution absent a retaliatory motive. *See Newsome v. Norris,* 888 F.2d 371, 374 (6th Cir 1989). To succeed on a claim for First Amendment retaliation, Plaintiff must set forth evidence that shows: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and, (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct. *Siggers-El*, 412 F.3d at 699 (citing *Thaddeus-X*, 175 F.3d at 394).

## VII.  ANALYSIS OF PLAINTIFF'S MOTION

Plaintiff's motion for summary judgment should be denied as procedurally improper and without consideration of the substance of the motion because it was not timely filed.  The scheduling order, which was entered September 24, 2021, set out March 14, 2022, as the deadline for the filing of dispositive motions.  *See* Scheduling Order at 3.  Although Plaintiff sought to extend the time to file a dispositive motion, the Court denied Plaintiff's request, finding that he had not shown good cause to extend the deadline.  *See* Order entered March 30, 2022 (Docket Entry No. 52) at 2-3.  Plaintiff's motion for summary judgment was filed on May 2, 2022, well past the deadline for filing dispositive motions.  Plaintiff offers no excuse for the untimeliness of his motion, and he must bear the consequence of filing it nearly two months past the deadline.

The Court recognizes that Plaintiff is proceeding *pro se* and, as such, is entitled to some indulgences.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  However, "the lenient treatment generally accorded to *pro se* litigants has limits."  *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  *Pro se* parties must follow the same procedural rules, including procedural deadlines, that govern other litigants.  *Id*. ("Where, for example, a *pro se* litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant"); *Smith v. Hoffner*, 2017 WL 2061406 at *1 (W.D. Mich. May 12, 2017) (denying *pro se* prisoner plaintiff's motion for summary judgment as untimely under the court's case management order); *Smith v. Owens*, 2012 WL 6085137 at *6 (E.D. Tenn. Dec. 6, 2012) (denying *pro se* prisoner plaintiff's motion for summary judgment as untimely under the court's scheduling order).

# VIII.  ANALYSIS OF DEFENDANTS' MOTION

After review of the parties' filings and the entire record in this case, the Court finds that Defendants have shown that they should be granted summary judgment on Plaintiff's claims. Defendant Perry raises a conclusive exhaustion defense under the PLRA that has not been rebutted by Plaintiff.  With respect to the claims against the remaining Defendants, the Court finds that, even when the evidence in the record is viewed in the light most favorable to Plaintiff, there is a lack of evidence upon which a reasonable jury could rely to find in favor of Plaintiff. Any factual disputes that exist do not amount to genuine issues of material fact that require resolution by the jury at trial.

Before addressing Defendants' arguments, the Court finds that there is a general deficiency in Plaintiff's response in opposition to Defendants' motion that is significant. Plaintiff's response is not cursory and his memorandum sets out his arguments, *see* Docket Entry No. 55, as well as a specific response to Defendants' statement of undisputed facts.  *See* Docket Entry No. 54.  However, other than (1) copies of his Segregation Unit Records, (2) a copy of the October 9, 2020, memorandum from Perry that imposed the property restriction, and (3) copies of three TDOC policies,[4] Plaintiff fails to offer other actual evidence in support of his response in opposition.  He has not submitted any supporting affidavits or declarations or any answers from Defendants to discovery requests that were served upon them.  As a result, the many factual assertions contained in both his memorandum and his response to Defendants' statement of undisputed facts are unsupported by evidence that is in the record.

---

[4] Policy #506.16, Living Conditions For Segregated Inmates; Policy #112.08, Personal Hygiene Resources For Inmates; and Policy # 502.05 Definitions Of Disciplinary Offenses.

Plaintiff is not entitled to a trial based solely upon the allegations of his complaint. *Goins, supra.* When a defendant has presented a well-supported motion for summary judgment that attacks the merits of a plaintiff's claims, such as Defendants' motion, the party opposing the motion may not rely solely on the pleadings but must present evidence supporting the asserted claims. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Plaintiff's response in opposition generally lacks affirmative and probative evidence in support of his claims that is sufficient for a reasonable trier of fact to find in his favor. *See Bell*, *supra*. Conclusory allegations, speculation, and unsubstantiated assertions are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

A. Defendant Perry

Defendant Perry raises a meritorious PLRA exhaustion defense to Plaintiff's claims against him. Defendant Perry sets forth undisputed evidence that none of the three grievances Plaintiff filed about the events at issue complained about wrongdoing Perry. *See* Declaration of Heather Kelley at ¶¶ 10-14. Plaintiff essentially acknowledges this by arguing that (1) Perry's liability is based upon his failure to rectify the matter by ruling on the grievances and (2) he was unable to name Perry in a grievance because he could not file multiple grievances about the same issue. *See* Plaintiff's Response to Defendants' Memorandum of Law (Docket Entry No. 55) at 2.

Plaintiff's arguments fail to rebut the exhaustion defense. A grievance that fails to address the issue that serves as the basis of a subsequent legal claim has not been properly exhausted and the Court should dismiss his claim. *Cook v. Caruso*, 531 Fed. Appx. 554, 562 (6th Cir. 2013) (ruling that an inmate had not properly exhausted his administrative remedies because his first grievance did not address his being assigned to the top bunk of his cell, the basis

12

of the complaint). Plaintiff's failure to raise in a grievance the matter of Defendant Perry's alleged unlawful conduct forecloses him from pursuing his claim against Perry. Plaintiff's contention that he could not file a grievance against Perry because he had already filed a grievance against Defendant Coleman is simply unpersuasive given that he actually filed a grievance about his living conditions that named each of the other Defendants after he had filed his grievance against Coleman about retaliation.

Furthermore, to the extent that Plaintiff argues that Defendant Perry should be deemed to himself have retaliated against Plaintiff because Perry did not rule in favor of Plaintiff in his grievance against Coleman, this argument lacks merit. A prison official's act of deciding a prison grievance cannot render him personally liable under Section 1983 for the underlying conduct alleged in the grievance. If an internal prison grievance triggered a duty that could form the basis for constitutional liability if the responding official did not overturn the underlying wrong complained about, then prison administrators would essentially become liable for all acts committed within the prison system that are the subject of an institutional grievance. Such a scenario is not consistent with the requirement of a showing of personal liability under Section 1983. *See Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Henry v. Pogats*, 35 F.3d 565, 1994 WL 462129 (6th Cir. Aug. 25, 1994) (unpublished) ("A combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983."); *Coldon v. Ruck*, 2018 WL 2193929 at *7 (M.D. Tenn. May 14, 2018) (Crenshaw, J.) (allegation that prison official denied prisoner plaintiff's administrative complaint is insufficient "to demonstrate the kind of personal involvement" necessary to support a claim under Section 1983).

13

B. Eighth Amendment Claim

Summary judgment should be granted in favor of Defendants on this claim because the evidence before the Court is not sufficient to permit a reasonable jury to find that Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment was violated. Several factors support the grant of summary judgment to Defendants.

First, the evidence before the Court cannot support a reasonable conclusion that the conditions about which Plaintiff complains were objectively severe enough to rise to the level of violating the Eighth Amendment. A claim premised upon allegations that a prison inmate's living conditions amount to cruel and unusual punishment must be supported by a showing of severe conditions of confinement which deprived the inmate of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," restrictive or even harsh conditions do not violate the Constitution, *Rhodes*, 452 U.S. at 347, and extreme or grave deprivations are required for a claim that the conditions of a prisoner's confinement violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). *See Rhodes*, *supra*; *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).[5]

While the Court does not discredit that Plaintiff was subjected to harsh living conditions during the short period of time that he was on restricted property segregation, the bulk of the conditions about which he complains – a dirty cell, an unclean toilet, no cleaning supplies or personal hygiene items for eight days, no opportunity to shower, shave, or have recreation for

---

[5] Defendants cite to *Estelle . Gamble*, 429 U.S. 97, 102-03 (1976), for the proposition that conditions of confinement must "shock the conscience" in order to violate the Eighth Amendment. *See* Defendants' Memorandum at 8. *Estelle* says no such thing. Nothing in *Estelle*, which involved an inmate's medical care claim under the Eighth Amendment, requires application of a "shock the conscience" test to a conditions of confinement claim.

14

eight days,[6] and no clothing or bedding except for a mattress and boxer shorts for eight days –
simply do not rise to the level of grave and extreme deprivations given the facts of this case and
the unique context of the prison setting. *See Richmond v. Settles*, 450 Fed. App'x 448, 455 (6th
Cir. 2011) (defendants were entitled to summary judgment because the prisoner plaintiff's
deprivation of toilet paper, soap, toothpaste, toothbrush, running water, and showers for six days
while on behavioral management failed to support an actionable Eighth Amendment claim).
Harsh and unpleasant living conditions in prison do not violate the Eighth Amendment. *Rhodes*,
452 U.S. at 347; *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

One of the living conditions alleged by Plaintiff - that the temperature in his cell was so
cold that he had to tear open his mattress and crawl inside of it to stay warm – would appear to
be objectively serious enough to implicate the Eighth Amendment. However, Plaintiff has not
supported this allegation with any actual evidence. Furthermore, the grievance that Plaintiff filed
about his living conditions while on restricted property segregation makes no mention of this
condition or of having to crawl inside his mattress, and there is likewise no reference to any such
event in evidence that is in the record. Finally, there is no evidence of Plaintiff making a specific
complaint about this event to any Defendant.

---

[6] Defendants set forth evidence that Plaintiff was offered, but refused, the opportunity to
shower and shave and the opportunity to take out-of-cell recreation during the time period he
was on restricted property. *See* Defendants' Statement of Undisputed Material Facts at ¶¶ 41-48.
Although Plaintiff asserts that he was not offered the opportunity for these activities, *see*
Plaintiff's Response (Docket Entry No. 55) at 3, as noted *supra*, he does not support his
assertions with actual evidence. Further, pursuant to Rule 36 of the Federal Rules of Civil
Procedure, he is deemed by his failure to respond to Defendants' requests for admissions on
these factual matters to have admitted that he was offered but refused these opportunities. *See*
Docket Entry No. 48-1. Even if he had properly supported his factual assertions, however, a
genuine issue of material fact would not exist because the short term deprivation of these
activities does not rise to the level of a grave and extreme deprivation given the facts of this case.

Second, Plaintiff's exposure to the conditions at issue was brief and temporary. Conditions of confinement that are temporary in nature rarely rise to a level that implicates constitutional concern. *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months."). Other courts have found that exposure to objectionable living conditions for time periods comparable to the eight-day period at issue in this case did not rise to the level of a violation of the Eighth Amendment. *See Grissom v. Davis*, 55 Fed. App'x 756, 757-58 (6th Cir. 2003) (holding that 7-day period where inmate was not given mattress, blanket, or sheets did not deprive her of basic human needs or cause her to suffer serious harm); *Wells v. Jefferson Cty. Sheriff Dep't*, 35 Fed. App'x 142, 143 (6th Cir. 2002) (finding that sleeping on a mattress on the floor in a cold cell for six days was not a constitutional violation); *Metcalf v. Veita*, 1998 WL 476254 at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *Martinez v. Gore*, 2021 WL 2269987 at *3 (W.D. Ky. June 3, 2021) ("The Court finds that Plaintiff's claim that he spent four days with nothing but paper boxers to wear in a cold cell with no mat, sheets, blankets, shoes, socks, or other property, standing alone, does not state an Eighth Amendment claim"). The Court finds that these cases support a finding that Plaintiff's Eighth Amendment rights were not violated.

Third, there is no evidence before the Court that any of the living conditions complained about by Plaintiff caused an actual and substantial risk of serious damage to his health. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Plaintiff asserts merely that he developed stains on his teeth, "cracked skin" on his feet, and

16

itching in his genital area because of the complained about conditions. He has not buttressed these assertions with any actual evidence that would support a reasonable conclusion that these conditions amounted to an actual and substantial risk of serious damage to his health.

Finally, for an individual defendant to be found liable of an Eighth Amendment violation, there must be evidence of a culpable state of mind on the part of the defendant. *See Farmer*, 511 U.S. at 834; *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001). In a prison conditions of confinement case, a defendant must have acted in a deliberately indifferent manner to the inmate's health or safety. *Farmer*, *supra*. There is no such evidence in this case. The short-term property restriction imposed upon Plaintiff occurred pursuant to a prison policy that was implemented by Defendant Coleman and approved by the Warden's designee because Plaintiff had covered the windows in his cell and refused orders to remove the coverings. It is a well-accepted principle that the management of prison facilities is best left to prison officials. *See Thornburgh v. Abbott*, 490 U.S. 401, 404-08 (1989); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). With respect to the Defendants other than Coleman, there is no evidence that any of these Defendants were responsible for implementing the property restriction at issue or that they had any authority to rescind the directive that was issued by Coleman and approved by the Warden's designee. Further Defendants have set forth unrebutted evidence that, except for two instances involving Defendant Carpenter, they were not the prison officials responsible for providing Plaintiff with the opportunities to take recreation or to shower/shave/bathe. *See* Defendants' Statement of Undisputed Facts at ¶¶ 50-53.

17

C. Retaliation Claim

This claim is premised upon Plaintiff's allegation that his property was confiscated and he was placed on a property restriction as retaliation by Coleman because Plaintiff had sued Coleman in another federal lawsuit. As set out below, the Court finds that Defendant Coleman is entitled to summary judgment on this claim.

To succeed on his First Amendment retaliation claim, Plaintiff must set forth evidence showing that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and, (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct. *Siggers-El*, 412 F.3d at 699.

Initially, the Court rejects Defendants' argument that Plaintiff cannot satisfy the first and second elements of his retaliation claim because he "fails to provide any proof that [his other lawsuit] was anything more than a frivolous one." *See* Defendants' Memorandum at 18. The Court takes judicial notice of the fact that the other federal lawsuit filed by Plaintiff, *Watison v. Core Civic Solutions* was not dismissed as frivolous. To the contrary, numerous defendants were served with process in that case and were required to defend the case. While a judgment was ultimately entered in favor of the defendants on the merits of the case, Plaintiff's pursuit of that lawsuit certainly amounted to protected First Amendment activity that satisfies the first element of a retaliation claim.[7] Defendants do not actually make any other argument for why the actions about which Plaintiff complains in the instant case would not amount to an adverse action for the purposes of a retaliation claim.

---

[7] Given that counsel for the Defendants in the instant case also represented the defendants in *Watison v. Core Civic Solutions* and was thus familiar with that case, the Court wonders why counsel even raised this meritless argument.

18

Nonetheless, summary judgment should be granted to Defendant Coleman because the evidence before the Court fails to support the third element of the claim. With respect to the causal connection element, Plaintiff bears the burden of establishing by a preponderance of the evidence that Coleman's actions were motivated at least in part by Plaintiff's conduct of filing the other lawsuit. *See King v. Zamiara*, 680 F.3d 868, 694 (6th Cir. 2012). While the Court takes judicial notice of the fact that Coleman was, in fact, named as a defendant in Plaintiff's other federal lawsuit, Plaintiff offers no actual evidence showing a causal connection between this fact and Coleman's implementation of the property restriction upon Plaintiff. Although Plaintiff asserts in his complaint and in his response in opposition that Coleman offered to return the property taken from Plaintiff in exchange for Plaintiff dismissing the lawsuit that he had filed against Coleman, *see* Docket Entry 55 at 5 and Complaint at 3, Plaintiff fails to offer any actual evidence supporting this assertion. An unsupported factual assertion, such as the one made by Plaintiff, is simply not evidence that is sufficient to raise a genuine issue of material fact in the face of a motion for summary judgment.

Plaintiff appears to dispute the legitimacy of Defendant Coleman's explanation that the property restriction arose from the fact that Plaintiff had covered his cell window. *See* Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶¶ 12-17. However, Plaintiff fails to offer any evidence that he had not covered his cell window. Further, the grievance records from the first grievance Plaintiff filed indicate that he admitted in the grievance proceedings that he had covered his window. *See* Docket Entry No. 48-9 at 29. Additionally, Plaintiff is deemed to have admitted by his failure to deny Defendants' requests for admissions on this issue that he covered his cell window. *See* Docket Entry No. 48-1.

19

Based upon the evidence that is in the record before the Court, no reasonable jury could find in favor of Plaintiff on this claim. Any issues of fact that exist do not amount to genuine issues of material fact that require resolution by the trier of fact.

D. The Unserved Defendants

Defendant Carter has not been served with process in this action and is therefore subject to dismissal under Rule 4(m) of the Federal Rules of Civil Procedure. This Report and Recommendation constitutes the requisite notice to Plaintiff of dismissal of his claim against Defendant Carter for lack of service.

## R E C O M E N D A T I O N

For the reasons stated, it is respectfully RECOMMENDED that:

1) Defendant f/n/u Carter be DISMISSED under Rule 4(m) of the Federal Rules of Civil Procedure for lack of service of process;

2) Plaintiff's motion for summary judgment (Docket Entry No. 60) be DENIED; and,

3) the motion for summary judgment filed by Defendants Grady Perry, Tyler Barnett, Michelle Carpenter, Larry Coleman, Tina Tarnowski, and Bethanie White (Docket Entry No. 47) be GRANTED and this action be DISMISSED WITH PREJUDICE as to all claims.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Any response to the objections must be filed within fourteen (14) days after service of objections.  *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge